[No. 76720-3.   En Banc.]
Argued February 14, 2006.     Decided April 6, 2006.

KURTIS R. MAYER ET AL., *Petitioners*, v. STO INDUSTRIES, INC., *Respondent*.

678

*James B. Meade II* (of *Forsberg & Umlauf, P.S.*) and *Margaret Y. Archer* and *Bradley A. Maxa* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, L.L.P.*), for petitioners.

*Philip A. Talmadge* and *Anne E. Melley* (of *Talmadge Law Group, P.L.L.C.*) and *Kenneth Hobbs* (of *Stafford Frey Cooper*), for respondent.

¶1 OWENS, J. — We are asked to resolve several issues involving the trial court's award of discovery sanctions, attorney fees, costs, and damages against the manufacturer of a defective, stucco-like product applied to the exterior of the plaintiffs' home. Remanding the matter, the Court of Appeals directed the trial court to eliminate a portion of the sanctions award and make additional findings on the record supporting the imposition of sanctions. The Court of Appeals also ordered the trial court to recalculate the attorney fees and costs assessed under the Consumer Protection Act (CPA), chapter 19.86 RCW. We reverse the Court of Appeals on the foregoing issues, but we affirm the conclusion of the trial court and Court of Appeals that the plaintiffs were entitled to damages not only for the physical repair of their home, but also for the home's diminished value.

## FACTS

¶2 Kurtis and Pamela Mayer began remodeling their waterfront vacation home in Dash Point in 1988. In April 1989, contractors applied to the exterior of the home the Exterior Insulation Finish System (EIFS), a synthetic stucco product manufactured by Sto Industries. In 1990, after the Mayers noticed water damage below the windows, the windows were recaulked. Four years later, the Mayers discovered dry rot around the window trim and in the substructure of the exterior walls. The Mayers sued Sto and others in April 1995. By early 1997, the Mayers had settled their claims with all defendants except Sto. The Mayers' claims against Sto under the CPA and the Washington product liability act (WPLA), chapter 7.72 RCW, were tried to a jury in June 1997 before Pierce County Superior Court Judge John A. McCarthy. The jury returned a defense verdict.[1]

¶3 After the verdict, an attorney in North Carolina representing plaintiffs in EIFS litigation sent the Mayers a copy of a 1991 memorandum written by Sto's technical services manager, Thomas Remmele, in which Remmele admitted that the EIFS was inherently flawed. Because Remmele had testified to the contrary at the Mayers' trial, the Mayers filed a motion under CR 59, seeking a new trial based upon the newly discovered evidence. The trial court denied the motion, as well as the Mayers' subsequent motion for reconsideration, and the Mayers appealed.

¶4 In an unpublished decision, the Court of Appeals reversed the trial court's denial of the Mayers' motion for a new trial, concluding that "[a]dmission of the memorandum

---

[1] Clerk's Papers (CP) at 1401-05. The jury attached the following note to the verdict form: "This decision was very difficult to arrive at. We followed the laws as presented to us and the instructions. The evidence showed that the STO product is reasonably safe, that there are adequate instructions and there was no act of deception. We feel sorry for the damages sustained by the Mayers. The Mayers deserve to be compensated for those damages. But we find the law, the evidence and the testimony does not support that the defendant is that party. We further believe that the current literature on the STO product should be more descriptive about the type of system it is." CP at 1604.

may have changed the result of the trial because it admits what the Mayers were forced to try to prove through other means—that the system has an inherent flaw." *Mayer v. Sto Indus., Inc.*, noted at 97 Wn. App. 1029, 1999 Wash. App. LEXIS 1651, at *20. The Mayers then filed a motion in the trial court seeking discovery sanctions against Sto under CR 26(g) and this court's decision in *Washington State Physicians Insurance Exchange & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993). In an oral ruling, Judge McCarthy concluded "that Sto had committed a discovery abuse" but that the calculation of an appropriate remedy would have to await the outcome of a second trial. Clerk's Papers (CP) at 3475.

¶5 After the parties accepted Judge McCarthy's offer to recuse himself, the case was reassigned to Pierce County Superior Court Judge Rosanne Buckner and tried before a jury in April and May 2002. The Mayers used the Remmele memo, as well as dozens of other previously withheld documents, to support their claim that Sto was liable under the CPA and the WPLA for its failure to warn. The jury returned a verdict for the Mayers. The Mayers were awarded $266,653.75 in damages,[2] along with the maximum award of $10,000.00 in treble damages under the CPA. For the attorney fees and costs that the Mayers incurred in the second trial, they were awarded, under the CPA fee-shifting provision, $352,693.50 in attorney fees and $48,691.05 in costs.

¶6 As to the Mayers' renewed motion for discovery sanctions, the trial court imposed the following monetary sanctions against Sto to compensate the Mayers for the first trial and first appeal: $468,147.29 in attorney fees and expenses for the first trial; $276,732.75 in interest on that sum; and $33,717.00 in attorney fees for the first appeal. The trial court stated that the discovery sanctions "serve[d] only to compensate the Mayers for the wasted effort from the first trial" and that the attorney fees requested for the first

---

[2] The jury set the total damages at $484,825 but allocated 55 percent of the fault to Sto, 20 percent to the Mayers, and 25 percent to other entities.

appeal were likewise "reasonable to compensate them for Sto's discovery abuse." CP at 3476.

¶7 Sto appealed, and the Mayers cross-appealed. The Court of Appeals held that the trial court erred in four respects: (1) awarding sanctions without following the procedures set forth in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997); (2) imposing interest on the sanctions; (3) awarding attorney fees under the CPA for the second trial without excluding the time spent on non-CPA matters; and (4) failing to clarify that the costs awarded for the second trial must be limited to those listed in RCW 4.84.010. *Mayer v. Sto Indus., Inc.*, 123 Wn. App. 443, 98 P.3d 116 (2004). The Court of Appeals upheld the trial court's instruction entitling the Mayers to damages for both the cost of restoration and the diminution in value.

¶8 The Mayers petitioned this court for review, and Sto raised additional issues in its answer. We granted review, and both parties thereafter filed supplemental briefs.

## ISSUES

¶9 (1) Did the trial court abuse its discretion in awarding monetary compensatory discovery sanctions without following the procedures set forth in *Burnet*, 131 Wn.2d 484?

¶10 (2) Did the Court of Appeals correctly conclude that the trial court had awarded "interest on the sanctions"? If the interest awarded was not "interest *on* the sanctions" but "interest *as* a sanction," was the award an abuse of the trial court's discretion?

¶11 (3) Assuming (contrary to Sto's contention in its answer) that the Mayers established the elements of their CPA claim, did the trial court abuse its discretion by awarding attorney fees under the CPA for the second trial without segregating the time spent on the CPA claim from time spent proving the WPLA violation?

¶12 (4) Did the Court of Appeals properly direct the trial court to clarify on remand that it had limited the costs awarded under the CPA to those listed in RCW 4.84.010?

¶13 (5) Did the trial court err in awarding the Mayers not only damages for repairing the home but also damages for the home's diminished value (so-called "stigma damages")?

## ANALYSIS

¶14 *Standard of Review.* A trial court exercises broad discretion in imposing discovery sanctions under CR 26(g) or 37(b), and its determination will not be disturbed absent a clear abuse of discretion. *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976); *Fisons*, 122 Wn.2d at 355-56; *Burnet*, 131 Wn.2d at 494. An abuse of discretion occurs when a decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Associated Mortgage*, 15 Wn. App. at 229. A discretionary decision rests on "untenable grounds" or is based on "untenable reasons" if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'" *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)). Questions of law are reviewed de novo. *In re Firestorm 1991*, 129 Wn.2d 130, 135, 916 P.2d 411 (1996); *Fisons*, 122 Wn.2d at 339 (noting that "[a] trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law").

¶15 (1) *Applicability of the* Burnet *Requirements.* The Mayers first moved for discovery sanctions before Judge McCarthy, after the Court of Appeals determined in its first, unpublished decision that Sto's discovery abuse entitled them to a new trial. The Mayers asserted that sanctions were warranted "under authority of CR 26(g)" and this court's decision in *Fisons*, 122 Wn.2d 299. CP at 1670. Adhering to Judge McCarthy's conclusion that the fashioning of an appropriate remedy would have to await the

outcome of the second trial, the Mayers filed a new motion after receiving the second jury's favorable verdict in May 2002. In the opening sentence of that motion, the Mayers stated that they were "bring[ing] this Motion for Final Judgment, Fees, Costs and Discovery Sanctions under Civil Rules 26, 37 and 54, RCW 19.86.[0]90 and [Fisons]," CP at 2445, but in the section of their motion devoted to discovery sanctions, they made no mention of CR 37, focusing instead on the interpretation of CR 26 in Fisons. Moreover, the Mayers indicated in the motion that they were attaching their original motion for discovery sanctions filed in 2000, and their arguments in the prior motion were likewise based entirely on CR 26(g) and Fisons. The trial court, in awarding discovery sanctions "to compensate the Mayers for the wasted effort from the first trial," did not specify whether the sanctions were imposed pursuant to CR 26(g) or CR 37.

¶16 The two rules are similar. CR 26(g) requires that if a party is represented by counsel, at least one attorney of record must sign every discovery request, response, or objection. The signature "constitutes a certification that he has read the request, response, or objection, and that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is . . . consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." CR 26(g). The rule further provides that if the certification requirement is violated, "*the court,* upon motion or upon its own initiative, *shall impose upon* the person who made the certification, *the party on whose behalf the* request, *response*, or objection *is made,* or both, *an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee.*" *Id.* (emphasis added). Assuming that the trial court imposed the discovery sanctions pursuant to CR 26(g) and this court's interpretation of that rule in *Fisons,* the court imposed the monetary compensatory sanctions against Sto for its counsel's certifica-

tion of Sto's inadequate, evasive responses to the Mayers' discovery requests.

¶17 CR 37(b)(2) provides, in part, that "if a party *fails to obey an order entered under rule 26(f)*, the court in which the action is pending may make such orders in regard to the failure as are just."[3] (Emphasis added.) CR 37(b)(2) provides a nonexclusive list of orders that a trial court may make: for example, the court may order that certain facts be deemed established, that particular claims or defenses not be asserted, or that pleadings be stricken or a default judgment entered. *Id.* at (A), (B), (C); *see also* (D) and (E). Additionally, CR 37(b)(2) provides that, "*[i]n lieu of any of the foregoing orders or in addition thereto*, the court *shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure*, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.) The monetary compensatory sanctions in the present case were apparently awarded under CR 26(g) and *Fisons*, given that the sanctions did not meet the criteria of an award under CR 37(b)(2); the sanctions were not awarded pursuant to a CR 26(f) order and "in lieu of . . . or in addition to" the sanctions described in CR 37(b)(2)(A)-(E).

¶18 The Court of Appeals held in this case that the trial court abused its discretion by imposing monetary compensatory sanctions on Sto without following the procedures set forth in *Burnet*, 131 Wn.2d at 494. *See Mayer*, 123 Wn. App. at 454-55. *Burnet* concerned a trial court's order under CR 37(b)(2)(B). When defendant Sacred Heart Medical Center received a supplemental response to one of its interrogato-

---

[3] CR 26(f) permits the trial court to order a discovery conference and requires that, following such a conference, "the court shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any, and determining such other matters, including the allocation of expenses, as are necessary for the proper management of discovery in the action." The record in the present case does not appear to include an order entered pursuant to CR 26(f).

ries, disclosing that the plaintiffs "were contending that Sacred Heart was negligent in failing to properly review the physicians' credentials," Sacred Heart requested a CR 26(f) discovery conference and sought a protective order under CR 26(c). 131 Wn.2d at 490. Agreeing with Sacred Heart that the claim had not been properly pleaded, the trial court issued an order prohibiting the plaintiffs from asserting the credentialing claim and from seeking any further discovery from Sacred Heart on that theory. *Id.* at 491. Reviewing the procedure that the trial court had followed in issuing its CR 37(b)(2)(B) order, this court stated the following rule:

> When the trial court "chooses one of the harsher remedies allowable under CR 37(b), . . . it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed," and whether it found that the disobedient party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial.

*Id.* at 494 (quoting *Snedigar v. Hodderson*, 53 Wn. App. 476, 487, 768 P.2d 1 (1989), *rev'd in part*, 114 Wn.2d 153, 786 P.2d 781 (1990)).

¶19  To arrive at its three factors, the *Burnet* court relied on *Snedigar*, which had in turn relied on *Associated Mortgage*, 15 Wn. App. 223. The *Snedigar* court's holding (with the *Burnet* court's deletions italicized) is as follows:

> We . . . hold that when a trial judge chooses one of the harsher remedies allowable under CR 37(b), *the reasons for that choice should be clearly stated on the record. We further hold that when the most severe sanction of default or dismissal is ordered,* it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed, and whether it found the *Associated Mortgage* due process factors [of willfulness and substantial prejudice] to be present.

53 Wn. App. at 487 (emphasis added); *Associated Mortgage*, 15 Wn. App. at 228-29 (holding that "the sanction of a default judgment authorized by CR 37(b)(2)(C) is a harsh remedy, which should only be granted where there has been

a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial"). The *Burnet* court also cited a line of cases holding that the exclusion of testimony as a discovery sanction is an abuse of discretion, absent willful " ' "intentional nondisclosure, willful violation of a court order, or other unconscionable conduct." ' " 131 Wn.2d at 494 (quoting *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 706, 732 P.2d 974 (1987) (quoting *Smith v. Sturm, Ruger & Co.*, 39 Wn. App. 740, 750, 695 P.2d 600 (1985))).

¶20 In sum, the case law that the *Burnet* court relied on established that before a trial court may impose a CR 37(b)(2)(B) sanction excluding testimony, a showing of willfulness was required; that for "one of the harsher remedies allowable under CR 37(b)," the record must clearly state the reasons for the sanction; and that for the "most severe" CR 37(b)(2)(C) sanction of dismissal or default, the record must show three things—the trial court's consideration of a lesser sanction, the willfulness of the violation, and substantial prejudice arising from it. However, by elliptically quoting the three-part test of *Snedigar*, the *Burnet* court extended the test beyond the "most severe" sanctions of dismissal or withdrawal to encompass "the harsher remedies allowable under CR 37(b)"—a phrase that, at a minimum, means a CR 37(b)(2)(B) sanction excluding testimony but that, more broadly, encompasses any and all of the sanctions described in CR 37(b)(2)(A)-(E). However, nothing in *Burnet* suggests that trial courts must go through the *Burnet* factors every time they impose sanctions for discovery abuses. Nor does *Burnet* indicate that a monetary compensatory award should be treated as " 'one of the harsher remedies allowable under CR 37(b).' " 131 Wn.2d at 494 (quoting *Snedigar*, 53 Wn. App. at 487).

¶21 In the present case, the Court of Appeals acknowledged that *Burnet* concerned a CR 26(f) violation (which triggers sanctions under CR 37(b)(2)), but the court went on to state that "[t]he *Burnet* rationale applies equally

and is required under either [CR 26(g) or CR 37(b)(2)]." *Mayer*, 123 Wn. App. at 455. However, neither the expansive *Burnet* test nor the case law *Burnet* relied on placed requirements on a trial court's imposition of sanctions pursuant to CR 26(g). Moreover, in *Fisons*, this court made a distinction between CR 37 and CR 26(g): "[T]he sanctions provisions of CR 37 do not apply where, as here, the more specific sanction rule better fits the situation. . . . Because CR 26(g), the discovery sanctions rule, was adopted to specifically address the type of conduct involved here, it, rather than CR 11, CR 37 or the inherent power of the court, is applicable in the present case." 122 Wn.2d at 340. As the Mayers argued, the *Fisons* decision set the standards for discovery sanctions under CR 26(g) and made it clear that "intent need not be shown before sanctions are mandated." *Id.* at 345. Because the Mayers' sanctions motion was brought under CR 26(g), the *Burnet* test, which is applicable to " 'the harsher remedies allowable under CR 37(b),' " should have no applicability. *Burnet*, 131 Wn.2d at 494 (quoting *Snedigar*, 53 Wn. App. at 487).

¶22 A second problem with the extension of the *Burnet* test to the sanctions in the present case is that, here, at issue is the imposition of monetary compensatory sanctions. Even if the three-part *Burnet* test were applicable to the request for sanctions under CR 26(g)—or if the request made by the Mayers were construed as a request under CR 37(b)(2)—the monetary compensatory sanctions could not be viewed as " 'one of the harsher remedies allowable under CR 37(b),' " triggering the three-part test. *Burnet*, 131 Wn.2d at 494 (quoting *Snedigar*, 53 Wn. App. at 487). CR 37(b)(2) identifies monetary sanctions as an award made "in lieu of" or "in addition" to the orders described in CR 37(b)(2)(A)-(E). Significantly, in *Roberson v. Perez*, 123 Wn. App. 320, 96 P.3d 420 (2004), *review denied*, 155 Wn.2d 1002 (2005), the *Burnet* factors were applied to the trial court's determination that the proper sanction for a discovery abuse was to vacate a defense verdict, but the *Roberson* court treated the award of an additional compen-

satory sanction of $606,761 differently; without even citing the *Burnet* factors, the *Roberson* court applied the *Fisons* standards and considered the reasonableness of the award, which was imposed to compensate the plaintiffs for the costs of two prior trials. *Id.* at 342. And, finally, as the Mayers point out, the *Burnet* factors make little sense in the context of a compensatory award: the trial court's calculation of a compensatory award will necessarily involve consideration of greater and lesser amounts; the willfulness of the offending party (a requirement specifically rejected in *Fisons*, in any case) does not change the amount needed to compensate the wronged party; and incurring attorney fees because of discovery abuse is by definition prejudicial and can, in extreme cases, make litigation prohibitively expensive.

¶23 In light of the foregoing analysis, we reverse the Court of Appeals and hold that the reference in *Burnet* to the " 'harsher remedies allowable under CR 37(b)' " applies to such remedies as dismissal, default, and the exclusion of testimony—sanctions that affect a party's ability to present its case—but does not encompass monetary compensatory sanctions under CR 26(g) or CR 37(b)(2). 131 Wn.2d at 494 (quoting *Snedigar*, 53 Wn. App. at 487); *see, e.g., Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002) (requiring that *Burnet* factors be considered on the record "[w]hen a trial court imposes *dismissal or default* in a proceeding as a sanction for violation of a discovery order" (emphasis added)).

¶24 (2) *Interest Awarded as Discovery Sanctions.* As the *Fisons* court stated,

> [t]he purposes of sanctions orders are to deter, to punish, to compensate and to educate. Where compensation to litigants is appropriate, then sanctions should include a compensation award.

122 Wn.2d at 356 (footnote omitted). Here, the trial court specifically stated that the purpose of its sanctions award

was to compensate the Mayers. The judgment described the sanctions award as follows:

| $744,880.04 | (Discovery Sanctions—first trial fees and expenses ($468,147.29) and interest for four years, 338 days, ($276,732.75) |
|---|---|

CP at 3472. Plainly, the trial court's judgment defined the trial court's award of "Discovery Sanctions" as the sum of the fees and expenses from the first trial and the interest accruing on that amount. The judgment did not describe the attorney fees and expenses as the "Discovery Sanctions" and the interest on those fees and expenses as interest on the "Discovery Sanctions." The chart is consistent with the following explanation in the judgment:

> *As a discovery sanction,* the Court awards the Mayers the $468,147.29 spent on the first trial and interest on that amount of $276,732.75 for the four years and three hundred and thirty-eight days between July 25, 1997 [the date Sto entered judgment in its favor following the first trial] and June 28, 2002, the date on which the parties mutually agreed that this judgment should be entered. *This sanction* serves only to compensate the Mayers for the wasted effort from the first trial.

CP at 3476 (emphasis added). The Court of Appeals inaccurately labeled the interest portion of the sanctions as "Interest *on* the Sanctions" and further mischaracterized that portion of the sanctions as "prejudgment interest on the fees and costs the Mayers incurred in the first trial." *Mayer*, 123 Wn. App. at 456 (emphasis added). The Court of Appeals then noted that prejudgment interest is available only on liquidated sums and that "[a]wards of reasonable attorney fees are classically unliquidated claims." *Id.*

¶25 We reverse the decision of the Court of Appeals on this point and hold that the trial court did not abuse its discretion in calculating a reasonable compensatory sanction. The limitations on prejudgment interest have no applicability here, given that the interest at issue was a portion of the sanctions, not interest on a judgment. Analogous issues were raised in *Roberson*, 123 Wn. App. 320,

regarding the calculation of attorney fees and costs imposed as discovery sanctions. There, the city of Wenatchee, the party against whom the sanctions were imposed, "argue[d] that the court should not have compensated the plaintiffs for their counsels' travel time." *Id.* at 346. In the absence of Washington authority, the *Roberson* court upheld the trial court's award by "adopt[ing] the rationale" of a Florida court, which held that travel time, though generally not allowable when calculating a reasonable attorney fee, *was* compensable when attorney fees and costs were awarded as a sanction. *Id.* at 346-47. Likewise in *Roberson*, the city objected to the trial court's inclusion in the sanctions award of some costs not authorized in RCW 4.84.010. *Id.* at 347. Again, the *Roberson* court upheld the trial court's exercise of discretion, declining to limit the monetary sanctions. In sum, the restrictions on prejudgment interest should have no applicability in the context of discovery sanctions. The trial court did not abuse its discretion in determining that the Mayers should be fully compensated for the money wasted on the first trial and for the loss of use of that sum for the period of time described in the judgment.

¶26 (3)-(4) *Attorney Fees and Costs under the CPA.*[4] Regarding attorney fees under the CPA, the trial court made the following finding: "The [Mayers'] requested CPA fees could not realistically be separated from time spent pursuing their Product Liability Act claims. Proof of the CPA claims required the Mayers to establish the elements of a failure to warn claim and then prove . . . that Sto engaged in unfair and deceptive acts and practices to keep the Mayers from knowing all the facts concerning the

---

[4] Sto's contention that the Mayers failed to establish the elements of their CPA claim is unpersuasive. Although Sto has correctly pointed out a mistake in the Court of Appeals decision, that mistake did not undermine the court's analysis. CPA plaintiffs must prove five elements, the third of which is that the challenged act "affects the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). To establish the public interest element, the act is first categorized as either a consumer transaction or a private dispute. Here, the Court of Appeals properly identified the matter as a private dispute, but the court then mistakenly set forth the factors applicable to a consumer transaction. Nevertheless, that error proved inconsequential because the court actually applied the private dispute factors to the facts before it.

product." CP at 3476-77. The Court of Appeals held that, "[r]egardless of the difficulty in segregation, the trial court *must* perform the task." *Mayer*, 123 Wn. App. at 460 (emphasis added) (citing *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 344-45, 54 P.3d 665 (2002)). But the *Behr* court was responding to ambiguity in the trial court's award; on the one hand, the trial court had stated that it segregated 139 hours of time spent on CPA issues, but on the other hand, the trial court had declared that because the issues were so intertwined, the CPA work could not reasonably be separated from the work on other issues. The *Behr* court ordered the trial court to "either undertake the appropriate segregation or to clarify [in] its order if it actually conducted the segregation." 113 Wn. App. at 345. The better authority on the segregation issue is found in *Hume v. American Disposal Co.*, 124 Wn.2d 656, 880 P.2d 988 (1994). There, this court stated that where "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." *Id.* at 673. We adhere to our holding in *Hume* and here conclude that, given the trial court's clear explanation that the CPA work could not be segregated from the WPLA work, the trial court's award of attorney fees under the CPA was not an abuse of discretion. We thus reverse the Court of Appeals on this issue.

¶27 As to the trial court's award of costs under the CPA, the CPA permits a successful plaintiff to recover "the costs of the suit, including a reasonable attorney's fee." RCW 19-.86.090. The trial court made the following finding regarding CPA costs:

> The Mayers requested $169,822 in litigation costs under the Consumer Protection Act. The Court finds that the $47,000 for court reporters and transcripts, $53,000 for professional fees, the $29,000 for expert fees in the Detering Declaration and the miscellaneous charges cited on page 32 of Sto's Opposition to

Mayers Motion ($1,308.95) are deducted from the requested amount for a cost award under the CPA of $48,691.05.[5]

This court has held that "it gives the plaintiff in a Consumer Protection Act action an unwarranted recovery to extend costs beyond those statutorily defined in RCW 4.84.010." *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 743, 733 P.2d 208 (1987). RCW 4.84.010 entitles a prevailing party to recover, in general, filing fees, costs for service of process, notary fees, reasonable expenses for reports and records entered into evidence, statutory attorney and witness fees, and "[t]o the extent that the court . . . finds that it was necessary to achieve the successful result, the reasonable expense of the transcription of depositions used at trial." On the issue of the trial court's award of CPA costs, the Court of Appeals concluded that remand was warranted for the trial court to demonstrate that its award of CPA costs was consistent with *Nordstrom* and RCW 4.84.010.

¶28 We disagree. The record establishes, first, that Sto fully apprised the trial court of the law governing the award of CPA costs. *See* "Sto's Opposition to the Mayers' Motion for Attorney Fees and Litigation Costs," CP at 3096-101 (citing and discussing, among other decisions, *Nordstrom*, 107 Wn.2d 735). Second, the record shows that Sto delineated for the trial court the objectionable items submitted in the Mayers' request for CPA costs. The trial court's attentiveness to Sto's particular objections is evident in the trial court's memorandum decision and its findings, where the court refers to Sto's objections by citing the page number in Sto's memorandum. Because we find the record sufficiently clear, we reverse the Court of Appeals decision to remand the issue.

¶29 (5) *Damages for Diminished Value*. Sto argued that the trial court erred in awarding the Mayers "stigma damages," damages for the home's diminished value. However, where the damage to real property is permanent, a plaintiff is entitled to recover not only for the costs of

---

[5] CP at 3477. The finding mirrors the trial court's "Memorandum Decision on Fees and Costs." CP at 3469.

restoration and repair, but also for the property's diminished value. *See Pugel v. Monheimer*, 83 Wn. App. 688, 692, 922 P.2d 1377 (1996) (determining that withdrawal of building's lateral support permanently damaged marketability); *see also Grant v. Leith*, 67 Wn.2d 234, 237, 407 P.2d 157 (1965) (sustaining an award for restoration and permanent depreciation). The Court of Appeals noted that "[t]he Mayers presented unrebutted expert testimony that in addition to the repairs, they had suffered a permanent loss because they will have to disclose that the home is sided with EIFS, a known defective product." *Mayer*, 123 Wn. App. at 464. We affirm the Court of Appeals on the trial court's award of stigma damages.

## CONCLUSION

¶30 The Court of Appeals decision is affirmed in part and reversed in part. On the two issues pertaining to discovery sanctions, we reverse the Court of Appeals and uphold the trial court's sanctions award. Likewise reversing the Court of Appeals, we affirm the trial court's calculation of attorney fees and costs under the CPA. We affirm the determination of the Court of Appeals that the trial court did not err in awarding the Mayers not only damages for repairing their home, but also damages for the home's diminished value. Pursuant to RAP 18.1, the Mayers requested their attorney fees on appeal under the CPA; as the prevailing party, the Mayers are entitled to recover the portion of their attorney fees relating to the CPA issues.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, FAIRHURST, and J.M. JOHNSON, JJ., concur.