## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | |
|---|---|
| JOSHUA DRIGGS, a single man, | ) |
| | ) No. 32855-4-III |
| Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| ANDREW T.G. HOWLETT, M.D. and | ) UNPUBLISHED OPINION |
| JANE DOE HOWLETT, and their marital | ) |
| community, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| PROVIDENCE PHYSICIAN SERVICES | ) |
| CO. aka Providence Orthopedic | ) |
| Specialties, a Washington Corporation, | ) |
| | ) |
| Defendants. | ) |

FEARING, J. — During discovery and litigation of a medical malpractice suit, the trial court sanctioned defendant Andrew Howlett on three occasions. The trial court sanctioned Dr. Howlett for filing a motion for a protective order six days before a continued deposition date, despite Howlett receiving notice of the deposition two months earlier. The trial court sanctioned Howlett twice for violating the terms of two

stipulations addressing the conditions under which independent medical examinations could be conducted. Finally, the trial court assessed sanctions on Dr. Howlett for disclosing a personal surgery journal immediately before his trial testimony when he should have earlier produced the document during discovery. The trial court imposed $5,050 in total sanctions. We affirm all sanctions except sanctions imposed with regard to one of the independent medical examinations.

## FACTS

At fifteen years old, Joshua Driggs developed cancer in his right tibia. An orthopedic oncologist removed the cancerous section of the bone and inserted an allograft, which is bone from a cadaver. The orthopedic surgeon attached the cadaver bone with a plate and screws. Driggs suffered complications and eventually underwent another surgery by Dr. Andrew Howlett to remove the plate and replace it with an intramedullary rod through the tibia. Dr. Howlett testified that he informed Driggs, before the surgery, that he might not install a rod, but instead leave the allograft without fixation. Driggs denied that Howlett informed him of this possibility.

On March 6, 2009, Dr. Andrew Howlett performed the surgery, removed the plate, but did not install a rod. Within months, Joshua Driggs returned to Dr. Howlett's office because of leg pain. Howlett's Physician's Assistant, Brandi DeSaveur, took an X ray of Driggs' tibia and diagnosed a sprain. When the pain continued, Driggs journeyed to a hospital emergency room, where new X rays showed a fracture in the cadaver bone. The

fracture necessitated additional surgeries that left Driggs with a limp and other complications.

## PROCEDURE

Joshua Driggs sued Dr. Andrew Howlett and his employer, Providence Physician Services, for professional negligence and lack of informed consent. Driggs contended that Dr. Howlett violated the standard of care by failing to attach the allograft to fixation. Driggs also contended that Brandi DeSaveur violated the standard of care by failing to spot the fracture of the tibia in an X ray. Finally, Driggs alleged that Dr. Howlett should have and failed to obtain his consent, before surgery, to forgo fixation for the allograft.

Joshua Driggs' counsel requested three hours to conduct a first deposition of Dr. Andrew Howlett. The parties agreed to begin the deposition at noon and end at 4:30 p.m. in order to allow counsel time to complete the deposition and to accommodate Dr. Howlett's counsel's schedule. On May 3, 2013, Joshua Driggs' counsel deposed Andrew Howlett as planned. At approximately 4:30 p.m., counsel began a new line of questioning based on a recently produced report of one of Driggs' experts. Dr. Howlett's counsel objected to the line of questioning and requested that the deposition stop. Driggs' counsel informed defense counsel that the former intended to schedule a continued deposition, which plan defense counsel opposed. The first deposition concluded at 4:37 p.m.

On May 7, 9, 23, and 30, 2013, Joshua Driggs' attorney requested a date from

3

opposing counsel for Dr. Andrew Howlett's continued deposition. Defense counsel did not respond to any of these requests. On June 7, Driggs' attorney informed opposing counsel that, due to a lack of response, the former would serve Dr. Howlett with a subpoena. On June 11, Driggs served Dr. Howlett with a subpoena and notice of a continued deposition scheduled for August 12, 2013.

On August 6, 2013, six days before the continued deposition and fifty-six days after being subpoenaed for the deposition, Dr. Andrew Howlett moved for a protective order to prevent or limit time on the continued deposition. Dr. Howlett scheduled the motion for hearing on August 16, 2013, four days after the scheduled deposition. On August 6, Howlett's attorney sent a letter to Joshua Driggs' counsel unilaterally cancelling the August 12, 2013, continued deposition "[a]s a result of the pending protective order and the Court's vacation." Clerk's Papers (CP) at 165. On September 4, 2013, the trial court denied in part and granted in part Dr. Andrew Howlett's motion for a protective order. The trial court permitted Dr. Howlett's continued deposition and assessed CR 26 sanctions against Dr. Howlett for Joshua Driggs' reasonable attorney fees incurred in responding to the motion for a protective order.

On September 6, 2013, Joshua Driggs' counsel offered to accept $800 for terms in accordance with the September 4 order so long as he received prompt payment without a hearing. On September 9, Dr. Andrew Howlett moved for reconsideration of the order denying a protective order and assessing sanctions. On October 29, 2013, the trial court

4

denied Dr. Howlett's motion for reconsideration, while finding he violated CR 26(g) because the request for a protection order was not well grounded in fact and not made in good faith.

On March 1, 2013, Dr. Andrew Howlett served Joshua Driggs with notice of a CR 35 independent medical examination of Driggs by Russell Vandenbelt, M.D. On June 18, 2013, Driggs sent Dr. Howlett a CR 35 stipulation agreement regarding the independent medical examination. On July 3, 2013, counsel for Dr. Howlett sent Driggs a revised version of the CR 35 stipulation. The revised stipulation removed eight of the twenty-one stipulations contained in Driggs' proposal, including a provision barring laboratory and mental or psychological tests. The revised stipulation added a paragraph that read:

> If the Plaintiff is going to be asked to complete any forms, those forms shall be delivered to the Plaintiff's attorney not less than five (5) days before the examination. The Plaintiff shall deliver the appropriately completed forms to the Examiner at or before the time of examination.

CP at 289. Joshua Driggs agreed to the revised CR 35 stipulation. Both counsel signed the stipulation.

On July 18, 2013, Dr. Russell Vandenbelt performed a psychiatric evaluation of Joshua Driggs. As part of the evaluation, Vandenbelt administered a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) personality test. Driggs filled bubbles using a pencil to mark his true or false answers to test questions. On August 20, 2013, Dr. Vandenbelt produced a psychiatric evaluation of Driggs based in part on the results of

5

the MMPI-2 test.

On September 5, 2013, Dr. Andrew Howlett requested that Joshua Driggs submit to an independent medical examination by Dr. Bruce Rolfe scheduled for October 14, 2013. On September 30, 2013, the parties entered a CR 35 stipulation for the examination. Stipulation number nine barred the examiner from taking new X rays or imaging studies without prior written notice to Joshua Driggs' counsel. Counsel for Dr. Howlett sent Dr. Rolfe a copy of the CR 35 stipulation. On October 14, 2013, Rolfe performed an independent medical examination of Joshua Driggs. Dr. Rolfe took X rays of Driggs without notice to Driggs' counsel. Thereafter, Joshua Driggs requested the trial court impose sanctions on Dr. Andrew Howlett for Russell Vandenbelt's and Bruce Rolfe's violations of the CR 35 stipulations.

On June 18, 2012, Joshua Driggs submitted his first written discovery requests to Dr. Andrew Howlett. On August 29, 2012, Dr. Howlett responded to one of the interrogatories and requests for production as follows:

> **INTERROGATORY NO. 54:** Is the Defendant aware of any of the following written documents relating to the Plaintiff:
> a. All medical records;
> b. Incident reports made by any physician, nurse, or employee regarding any matter involving the Plaintiff not found in the patient's medical records;
> c. *Anecdotal or informal record made by any physician, nurse, or employee regarding any matter involving this patient not found in the patient's records.*
> **RESPONSE: Defendant is aware only of his own medical records and the medical records from Sacred Heart Medical Center, and believes there are medical records in existence from the University of Washington and from other providers including, but not limited to, Group Health.**

6

REQUEST FOR PRODUCTION NO. 13: Please provide a copy of any documents, notes, etc. identified in the above interrogatory.
**RESPONSE: Not applicable.**

CP at 843-44 (emphasis added).

On November 12, 2013, Joshua Driggs deposed Kallie Howells as Providence Physician Services' CR 30(b)(6) representative regarding Dr. Howlett's schedule on the day of Driggs' surgery, March 6, 2009. Driggs wished to explore the argument that Dr. Howlett omitted inserting the intramedullary rod because of a hurried schedule. Howells testified that office records listed eight surgeries for March 6, 2009. Howells only supplied a general list of the surgeries that did not identify the scheduled or actual times for each surgery.

In January 2014, the case proceeded to trial. Immediately before Dr. Andrew Howlett testified, he disclosed to the court and opposing counsel that he kept, in his home's safe, a personal handwritten journal of surgeries he performed throughout his career. Dr. Howlett brought the journal to the courtroom, and the trial court allowed Howlett to testify to its contents after Joshua Driggs examined its contents. The journal listed nine surgeries on March 6, 2009. During trial, Driggs requested sanctions for Dr. Howlett's untimely disclosure of the journal. The trial court reserved arguments on sanctions until after the conclusion of the trial. On January 24, 2014, the jury returned a verdict in favor of Dr. Howlett.

On May 1, 2014, the trial court ordered $4,000 in sanctions against Dr. Andrew

7

Howlett: $1,500 for each violation of the CR 35 stipulations, and $1,000 for failure to timely disclose Dr. Howlett's surgery journal. Dr. Howlett moved for reconsideration of the sanctions. On July 31, 2014, the trial court denied Dr. Howlett's motion to reconsider the order imposing sanctions and imposed an additional $1,050 in sanctions for Dr. Howlett's untimely motion for a discovery protection order.

## LAW AND ANALYSIS

The trial court imposed sanctions for four acts of Dr. Andrew Howlett or his agents: (1) Howlett's untimely motion for a protective order seeking the preclusion of a continued deposition of him, (2) Dr. Russell Vandenbelt's violation of the CR 35 stipulation by administering the MMPI-2 personality test, (3) Dr. Bruce Rolfe's violation of the second CR 35 stipulation by performing X rays, and (4) Howlett's untimely disclosure of his personal surgery journal. On appeal, Howlett challenges each sanction. We address each in such order. Andrew Howlett assigns error only to the assessment of the sanctions and not the amount of the sanctions. Therefore, we do not review the reasonableness of the amount of sanctions awarded.

The trial court relied on CR 26 and 37 in levying the sanctions. CR 26(g) reads:

> **Signing of Discovery Requests, Responses, and Objections.**
> Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney. . . . The signature of the attorney . . . constitutes a certification that the attorney . . . has read the request, response, or objection, and that to the best of [his or her] knowledge, information, and belief formed after a reasonable inquiry it is:
> (1) consistent with these rules and warranted by existing law or a

8

good faith argument for the extension, modification, or reversal of existing law;

(2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of    litigation. . . .

If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee.

The purposes of sanctions orders are to deter, to punish, to compensate and to educate. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993).

A trial court exercises broad discretion in imposing discovery sanctions under CR 26(g) or 37(b). *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). Such a discretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds. *Mayer*, 156 Wn.2d at 684. A decision is manifestly unreasonable if the court "adopts a view 'that no reasonable person would take.'" *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)). A decision is exercised on untenable grounds if the trial court "relies on unsupported facts or applies the wrong legal standard." *Mayer*, 156 Wn.2d at 684.

No. 32855-4-III
*Driggs v. Howlett*

## Motion for Protective Order

Dr. Andrew Howlett contends that the trial court erred when assessing sanctions against him for his untimely motion for a protective order. He argues the sanctions are based on untenable grounds because no court rule requires a party to move for a protective order by a certain deadline. We disagree.

The lack of a court rule prohibiting certain conduct by a party does not preclude the imposition of sanctions. Howlett cites no authority to support his argument that the lack of a rule directly prohibiting delaying conduct prevents sanctions. Nevertheless, the trial court held discretion to sanction Dr. Andrew Howlett under CR 26(g) because his untimely discovery motion unnecessarily delayed and increased litigation costs to Joshua Driggs. Under CR 26(g)(2), the court may impose sanctions for conduct that causes "unnecessary delay or needless increase in the cost of litigation." Dr. Howlett ignored four requests for a deposition date thus necessitating a subpoena. Driggs provided two months' notice of the deposition and Howlett waited to file his motion until his motion would delay the deposition.

## Independent Medical Examination by Russell Vandenbelt

Andrew Howlett contends that the trial court abused its discretion when ordering sanctions for Dr. Russell Vandenbelt's administration of the MMPI-2 test. Howlett contends the test did not constitute a "form" requiring prior review by Joshua Driggs' counsel in conformance with the CR 35 stipulation. Howlett also claims that the trial

10

court could not award sanctions under CR 37 because the stipulation did not amount to a court order. Finally, Howlett contends the conduct of Dr. Vandenbelt did not merit sanctions because Howlett never called Vandenbelt to testify, and thus administration of the test did not prejudice Driggs. We agree with Howlett's first argument. Because of the unique nature of the MMPI-2 test, the page on which Joshua Driggs' penciled answers should not be considered a "form" within the meaning of the stipulation.

The MMPI is the most widely used and researched standardized psychometric test of adult personality and psychopathology. MMPI Version 2 or MMPI-2 contains 567 test items and takes approximately sixty to ninety minutes to complete. The MMPI test is copyrighted by the University of Minnesota. Therefore, clinicians must pay to administer and utilize the test. More importantly, one cannot find the test on the Internet or a bookstore, nor may a psychiatrist share copies of the questions with others.

The MMPI-2 must be administered, scored, and interpreted by a professional, usually a clinical psychologist or psychiatrist, who has received specific training in MMPI-2 use. The test formerly was administered by the clinician asking the examinee the questions. The test is now commonly administered by computer, but the clinician still must introduce the test to the examinee. The taker should not know the questions in advance and may not retain a copy of the computer generated questions.

In short, under MMPI-2 protocol, Dr. Andrew Howlett could not have provided a copy of the MMPI-2 questions in advance of the independent medical examination.

11

Perhaps Howlett could have provided in advance the two pages on which Joshua Driggs later penciled his answers. But those pages would have been meaningless to Driggs and his counsel.

We agree with Andrew Howlett that the term "form," within the meaning of the CR 35 stipulation, referred to the standard patient information forms typically completed by a patient in the waiting room or even in advance of an appointment. Joshua Driggs could not complete the MMPI-2 answer sheet ahead of the independent medical examination. The parties' removal from the CR 35 stipulation of a provision precluding mental health testing bolsters our conclusion. We reverse the trial court's award of sanctions attributed to the independent medical examination performed by Russell Vandenbelt.

Independent Medical Examination by Bruce Rolfe

Dr. Andrew Howlett concedes that Dr. Bruce Rolfe violated the CR 35 examination stipulation. Howlett argues, nonetheless, that he should not be held responsible for Rolfe's violation of the stipulation. Howlett also repeats arguments asserted with regard to sanctions sought for the conduct of Russell Vandenbelt. Howlett claims that the trial court could not award sanctions under CR 37 because the stipulation was not a court order or award sanctions under CR 26(g) because the stipulation did not constitute a discovery request or response. We reject all three arguments.

We analogize to an agent's violation of the principal's contract. Bruce Rolfe acted

12

as the agent of Dr. Andrew Howlett when Rolfe performed the independent medical examination. The stipulation was more than a contract, but it also was a contract. The principal is liable for the conduct of the agent that amounts to a violation of the principal's contract if the agent acts within the course of employment. *J.R. Watkins Co. v. Palmer*, 193 Okla. 684, 146 P.2d 843, 845 (1944). If the misconduct of the agent causes a breach of the obligation or contract of the principal, then the principal will be liable in an action, whether such misconduct be willful or malicious, or merely negligent. *Milwaukee & Mississippi R.R. Co. v. Finney*, 10 Wis. 388, 393 (1860).

CR 37 authorizes sanctions to be imposed on a party or its attorney for failure to comply with a discovery order. Like the trial court, we consider the stipulation to be in the nature of a court order. The stipulation was used by the parties in place of an order. Discovery stipulations free the attorneys from an appearance in court and the judge from resolving numerous discovery disputes. A trial court should be able to rely on stipulations for discovery drafted and signed by attorneys as contracts to promote judicial economy. The spirit of cooperation and forthrightness during the discovery process is mandatory for the efficient functioning of modern trials. *Johnson v. Mermis*, 91 Wn. App. 127, 132, 955 P.2d 826 (1998).

The independent medical examination stipulation was in the form of a discovery request and response. CR 26(g) states that the signature of the attorney constitutes a certification that he has read the request and that, to the best of his knowledge, the request

13

or response is not interposed for any improper purpose. An improper purpose would be agreeing to a stipulation that the superior court would likely approve and sign and then violate it.

Regardless of whether CR 26(g) or 37(b) applies to a violation of a CR 35 stipulation, the trial court is not powerless to fashion and impose appropriate sanctions under its inherent authority to control litigation. *In re the Matter of Firestorm 1991*, 129 Wn.2d 130, 139, 916 P.2d 411 (1996). In *Firestorm*, our Supreme Court concluded that sanctions for violations of CR 26(b) are not specifically addressed in CR 26(g), CR 37, or CR 11. *Firestorm*, 129 Wn.2d at 139. Nevertheless, the high court determined that a trial court may impose appropriate sanctions under its inherent authority. *Firestorm*, 129 Wn.2d at 139. The court reasoned that the principles embodied in CR 11, CR 26(g), and CR 37 apply with equal force to sanctions decisions for CR 26(b) violations. We conclude that those same principles apply to sanctions decisions for violations of CR 35 stipulations.

We disagree with Andrew Howlett's contention that prejudice to the opposing party must be shown before the trial court imposes monetary sanctions. Dismissal of a suit for discovery violations requires substantial prejudice. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009). But no Washington court has held that a condition precedent to pecuniary sanctions is prejudice. The purposes of sanctions orders are to deter, to punish, to compensate and to educate. *Wash. State Physicians Ins. Exch.*

14

*& Ass'n v. Fisons Corp.*, 122 Wn.2d at 356 (1993). Monetary sanctions regardless of prejudice help to deter and educate. One federal court has ruled that a monetary award is appropriate if the opposing party shows no prejudice. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 112 (2d Cir. 2002).

### Late Disclosure of Personal Journal

Dr. Andrew Howlett contends that the trial court abused its discretion when assessing sanctions for the late disclosure of his personal surgery journal. He characterizes his delay as an innocuous oversight that did not prejudice Joshua Driggs in the presentation of his evidence at trial. Driggs emphasizes that, even if the discovery violation was unintentional, the failure to disclose the journal led to two unnecessary depositions that still did not reveal the information contained in the journal.

A party's failure to provide complete interrogatory answers is sanctionable under CR 26(g). *See Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc.*, 168 Wn. App. 710, 713-15, 282 P.3d 1107 (2012); *Amy v. Kmart of Wash. LLC*, 153 Wn. App. 846, 850-51, 223 P.3d 1247 (2009). Dr. Howlett failed to completely respond to interrogatory number 54 and request for production number 13. In August 2012, Driggs specifically requested any "[a]necdotal or informal record made by any physician . . . regarding any matter involving" Driggs. CP at 843. Howlett's personal journal included information about Driggs' March 6, 2009 surgery, and yet he did not disclose the journal until he was about to testify at trial in January 2014.

15

Andrew Howlett's argument that the tardy disclosure did not prejudice Driggs does not address the problem raised by the delay. Driggs conducted and incurred the cost of a deposition as a result of the failure to respond to the discovery requests. Driggs deposed Kallie Howells with the purpose of discovering the number and timing of the many surgeries Dr. Howlett performed on March 6, 2009. However, the information in the medical records was scant and only revealed the names of eight patients he operated on that day. The trial court reasonably assessed sanctions for Dr. Howlett's failure to disclose his surgery journal.

## Attorney Fees

Joshua Driggs pursues an award of reasonable attorney fees incurred in defending this appeal because of the frivolous nature of the appeal. Driggs does not contend that attorney fees are appropriate because he seeks to preserve an attorney fees award from below. This court does not review issues not argued. RAP 10.3(a); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012).

RAP 18.9(a) provides, in relevant part:

> The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who . . . files a frivolous appeal . . . to pay terms.

This court abides by the following considerations when determining whether an appeal is frivolous:

16

(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980); *Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123 (1982). RAP 18.9(a) does not speak in terms of filing one or more frivolous issues or assignments of error—only a frivolous appeal as a whole. *In re Marriage of Lee*, 176 Wn. App. 678, 693, 310 P.3d 845 (2013).

We agree with one of Andrew Howlett's assignments of error. Therefore, we conclude the appeal is not frivolous. Because Joshua Driggs prevailed on three of the four assignments of error, we rule Joshua Driggs to be the prevailing party, however, and award him assessable costs.

## CONCLUSION

We reverse the trial court's award of sanctions in the sum of $1,500 for the independent medical examination performed by Russell Vandenbelt. We affirm the remaining sanctions totalling $3,550. We deny Joshua Driggs an award of reasonable attorney fees.

A majority of the panel has determined this opinion will not be printed in the

17

No. 32855-4-III
*Driggs v. Howlett*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____Fearing, J._____
Fearing, J.

WE CONCUR:

_____Siddoway, C.J._____
Siddoway, C.J.

_____Korsmo, J._____
Korsmo, J.

18