[No. 29872-8-III.   Division Three.   May 3, 2012.]

WASHINGTON MOTORSPORTS LIMITED PARTNERSHIP, *Respondent*,
v. SPOKANE RACEWAY PARK, INC., *Defendant*, JEROME
SHULKIN, *Appellant*.

*Jerome Shulkin*, pro se.

*Jason A. Friedt*, for appellant.

*John P. Giesa, Aaron D. Goforth*, and *Robin L. Haynes* (of *Reed & Giesa PS*), for respondent.

¶1 KORSMO, C.J. — Attorney Jerome Shulkin appeals the imposition of monetary sanctions for wrongfully certifying his client's incomplete and inaccurate interrogatory answers. Finding no error, we affirm.

## FACTS

¶2 This appeal is the latest to reach this court from long-running litigation over a failed raceway. In particular, it is the latest action related to Mr. Orville Moe's efforts to refuse to answer questions or provide information relating to the failure of Spokane Raceway Park Inc. to the shareholders and bankruptcy trustee. In a previous appeal, this court upheld the trial court's $341,000 monetary sanction against Mr. Moe personally for failure to produce documents. *See Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc.*, noted at 156 Wn. App. 1035 (2010).

¶3 While that appeal was pending, matters proceeded along in the trial court. Washington Motorsports Limited Partnership (WMLP), the primary party opposing Mr. Moe,

filed a set of interrogatories designed to aid in its efforts to collect on its judgment against him. He eventually filed an untimely answer to those interrogatories; his counsel, Mr. Shulkin, certified the answers. The trial court ruled the answers were "untimely, incomplete and evasive." Clerk's Papers (CP) at 408-09.

¶4 The trial court also ordered Mr. Moe, on multiple occasions, to attend a deposition. He did not. The trial court on May 6, 2010, issued an arrest warrant for Mr. Moe over his failure to appear for the deposition. Effective June 11, 2010, the court also imposed monetary sanctions of $2,000 per day for Mr. Moe's failure to attend the deposition.

¶5 Desiring to be present in Spokane when his wife underwent surgery, Mr. Moe moved on December 23, 2010, to quash the bench warrant. The trial court denied the motion, but indicated it would quash the warrant after Mr. Moe had made a good faith effort to fully answer WMLP's discovery. Five days later, Mr. Shulkin delivered a supplemental response to the trial court in an effort to get it to the trial judge before she left for vacation. Many of the questions were unanswered. The questions that were answered contained responses that were virtually identical to those found "untimely, incomplete and evasive" 10 months earlier.

¶6 Mr. Shulkin again had certified the answers. The certification stated in part:

> The responses to the best of my knowledge or [sic] were not interposed for any improper purpose, such as to harass or cause unessesiory [sic] delay. The haste in preparation is founded on the availability of the judge to review same before the New Year and render a decision relative to removing the immediate thread [sic] of bench warrant pending a deposition of Orville Moe.

CP at 197-98 (second and third alterations in original).

¶7 Co-counsel David Miller had assisted Mr. Moe in preparing the answers, but declined to certify them. Mr. Miller withdrew as counsel shortly after the responses were

filed. Counsel for WMLP alerted Mr. Shulkin that the responses were incomplete and offered him the opportunity to correct them. No additional response was ever filed.

¶8 WMLP moved for sanctions against Mr. Shulkin for failure to abide by CR 26(g). Mr. Shulkin answered the motion and did not attempt to justify the answers. Instead, he explained that his certification was justified because Mr. Miller had refused at the last minute to sign the answers. Mr. Shulkin also asserted that the answers had been altered and were not the answers he had drafted for Mr. Moe. He also told the judge that he had "the responsibility to get something to this Court before a tragedy might occur, and I had to take that risk, and if I'm wrong because of that, so be it." Report of Proceedings at 20.

¶9 The trial court determined that an appropriate sanction was to impose the attorney fees and costs WMLP incurred in relation to the improper certification. The court awarded $8,624, requested by WMLP. Mr. Shulkin then appealed to this court.

## ANALYSIS

¶10 The primary issue is whether the trial court erred in imposing the sanction against Mr. Shulkin. Both sides also seek attorney fees on appeal. We will address both issues in that order.

¶11 *Trial Court's Sanction.* Mr. Shulkin argues that the trial court erred in finding that it had to sanction him and also erred by choosing the sanction that it did. WMLP contends that the court had to impose a sanction and chose the correct sanction. We agree with the latter assessment.

¶12 A trial court's decision on discovery sanctions is reviewed for abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Id.* at 339.

¶13 CR 26(g) in part provides:

Every request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record . . . . The signature of the attorney or party constitutes a certification that he has read the request, response, or objection, and that to the best of his knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules . . . (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . .

*If a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification . . . an appropriate sanction,* which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee.

(Emphasis added.)

¶14 The emphasized language mandates that a court sanction a person who violates the rule. *Fisons*, 122 Wn.2d at 355. How to sanction the person is left to the discretion of the trial judge, who is to consider the least severe sanction necessary to support the purpose of the sanction. *Id.* at 355-56. The sanction should be sufficient to further the goals of discovery and ensure that there is no profit from the violation. *Id.* at 356. The court also should consider the wrongdoer's intent and whether the responding party failed to mitigate its damages. *Id.*

¶15 Recognizing the rule of *Fisons* mandates some type of sanction in this case, Mr. Shulkin nonetheless argues that subsequent cases applied a discretionary sanction standard, citing to *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). *Burnet* does not help Mr. Shulkin. There the issue involved a sanction for a party's failure to obey a court order. CR 37(b)(2) expressly empowers the trial court to "make such orders" "as are just" to sanction a person who fails to obey an order or permit

discovery. *Burnet* recognized that the rule provided the trial court with "broad discretion" over appropriate sanctions. *Id.* at 494. In doing so, the court also noted the four *Fisons* principles, paraphrased above, that should guide the court in its exercise of discretion. *Id.* at 495-96.

¶16 Nothing in *Burnet* addressed the CR 26(g) situation, let alone suggested that *Fisons* wrongly construed the rule. Importantly, the Washington Supreme Court subsequently refused to apply *Burnet* to CR 26(g) in *Mayer v. Sto Industries, Inc.*, 156 Wn.2d 677, 132 P.3d 115 (2006). *Mayer* recognized that *Fisons* governed CR 26(g) violations, while *Burnet* applied to CR 37(b)(2) violations. 156 Wn.2d at 688-89. *Burnet* did not change the mandatory sanctions required by CR 26(g) for violation of the discovery certification rule.

¶17 Mr. Shulkin also argues that sanctions against him are inappropriate where Mr. Moe has already been sanctioned for doing the same thing. The problem with this argument is that Mr. Moe was sanctioned for a different violation committed 10 months before Mr. Shulkin again certified and delivered the same inadequate response. We know of no rule that immunizes a party or its representatives from sanctions for subsequent rule-breaking merely because there has been a prior offense.

¶18 Mr. Shulkin additionally contends that the trial court did not follow the *Fisons* principles in setting the amount of the sanction. 122 Wn.2d at 355-56. We disagree. The trial court expressly considered the four factors and explained why the monetary sanctions were necessary in this instance. CP at 199-200. In particular, the court noted that this was the second time Mr. Shulkin had certified the inadequate answers and that the previous sanctions against the client had not deterred counsel. The evasive answers were issued for the purpose of attempting to have a bench warrant quashed, again emphasizing the intentional nature of the violation. Mr. Shulkin did not act upon WMLP's offer to file supplemental answers. The court did apply the appropriate factors in making its decision.

¶19 More critically to this appeal, the court's reasoning was based on very tenable grounds. Sanctions against the client for the same inadequate response, which counsel had also certified, did not stop counsel from filing the same response a second time. Sanctioning counsel for the second violation would appear to be the only rational response left to the trial court. The trial court did not abuse its discretion.

■ ■ ¶20 Mr. Shulkin also argues that Mr. Miller was responsible for the second set of inadequate answers. There are two short answers to this argument. First, the trial court rejected the argument on factual grounds. This court does not find facts and is not in a position to substitute its view of the facts for those of the trial court. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Second, Mr. Shulkin, not Mr. Miller, certified the problematic response that is the subject of this appeal. This argument suggests that counsel certified a document without reading it, conduct that also violates CR 26(g) and would be an additional ground for sanctioning counsel. It is not a basis for mitigating sanctions here.

■ ¶21 Finally, Mr. Shulkin forcefully argues that he was justified in his actions because of the dilemma he faced—his client feared arrest, but wanted to be with his wife at the hospital during her time of need. However, Mr. Moe's continued contempt for court orders did not create a true ethical dilemma for counsel, let alone justify counsel's behavior. The ends did not justify the means.

¶22 It was Mr. Moe who had steadfastly refused to turn over information to the court and the receiver. It was Mr. Moe who was sanctioned severely for his behavior. It was Mr. Moe who steadfastly refused to live up to his legal obligations in these lawsuits and was facing an arrest warrant due to his obstinacy. It was Mr. Moe who wanted the warrant quashed, ostensibly so that he could be with his wife at the hospital. It was Mr. Moe who could eliminate that concern and be at the hospital without fear of arrest by the simple expedient of candidly and completely answering

the interrogatories. Yet it was Mr. Moe who declined to do so despite the fact that he could easily eliminate the dilemma facing him.

¶23 Counsel at that point had the clear answer to the purported dilemma—his client was not concerned enough about the problem to live up to his own obligations to the court. Instead, his client wanted to continue to resist the court's authority, but also seek the court's mercy by having it rescind its orders. Given his client's refusal to act in his own self-interest, we simply do not understand why counsel thought he had to do so, let alone why he was justified in certifying an inadequate response.

¶24 Co-counsel Mr. Miller refused to sign the certification. This was a huge warning flag for counsel. Nonetheless, Mr. Shulkin certified a response that was patently inadequate and had even been ruled "incomplete and evasive" a year earlier by the same trial judge who would have to pass judgment on it again. Far from justifying counsel's behavior, the purported ethical dilemma did not exist and did not excuse counsel from complying with CR 26(g).

¶25 The trial court had an obligation to impose sanctions in this case and did so after consideration of the appropriate governing principles. Its reasoning was sound and did not constitute an abuse of discretion.

¶26 *Attorney Fees on Appeal.* Both sides request attorney fees on appeal, with WMLP arguing that it is entitled to fees under both CR 26(g) and because the appeal is frivolous. We decline to find the appeal frivolous, but do award WMLP attorney fees under CR 26(g).

¶27 Mr. Shulkin requests attorney fees. He is not a prevailing party and has identified no basis in law to receive fees in this action under that circumstance. WMLP requests attorney fees pursuant to RAP 18.9 for defending against a frivolous appeal. An appeal is frivolous if, considering the entire record, no debatable issue is presented upon which reasonable minds might differ and it is so

devoid of merit that there is no reasonable possibility of reversal. *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200 (1997). An appeal that is affirmed merely because the appellant's arguments are rejected is not frivolous. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 241, 119 P.3d 325 (2005).

¶28 This appeal, although lacking merit, was not frivolous. The propriety of the trial court's chosen sanction presented a debatable topic.

¶29 RAP 18.1(a) allows this court to grant attorney fees if applicable law grants the right to such recovery. WMLP contends that it should be granted attorney fees pursuant to CR 26(g), which provides that an appropriate sanction may include an order to pay reasonable expenses incurred because of the violation, including a reasonable attorney fee. WMLP relies upon *Magaña v. Hyundai Motor America*, 167 Wn.2d 570, 220 P.3d 191 (2009). At issue in *Magaña* were discovery violations of CR 37(d). After considering the violations, the trial court found that the suitable remedy was a default judgment, which the defendant appealed. *Id.* at 582. The trial court also awarded the plaintiff attorney fees incurred because of the discovery violations. *Id.* at 592-93. In upholding the trial court, the Washington State Supreme Court also held that the plaintiff should recover attorney fees and expenses under RAP 18.1(a) for responding to the appeal "because CR 37(d) is the applicable rule that grants the right to recovery of attorney fees and expenses." *Id.* at 593.

¶30 We believe that under *Magaña*, this court should grant WMLP's request for attorney fees pursuant to RAP 18.1(a) and CR 26(g). As in *Magaña*, the sole reason for this appeal is the discovery violation that led to the sanction of attorney fees against counsel. As there, the sanction has been upheld on appeal. As there, the discovery rule sanction should also apply on appeal. It is appropriate to award attorney fees to WMLP for responding to this appeal.

¶31 The sanction is affirmed. WMLP is awarded its reasonable attorney fees in this court.

Brown and Kulik, JJ., concur.