# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

NANCY LOE, an individual, )
)    No. 72946-2-I
Appellant/Cross-Respondent, )
)    DIVISION ONE
v. )
)    UNPUBLISHED OPINION
BENSON VILLAGE ASSOCIATES, a )
Washington Corporation; CARPINITO & )
GOODWIN, dba BENSON VILLAGE )
APARTMENTS I, a Washington )
Partnership; OLYMPIC MANAGEMENT )
COMPANY, a Washington Corporation; )
JOSEPH CARPINITO and JANE DOE )
CARPINITO, individually and as a )
marital community; and WILLIAM )
CARPINITO and JANE DOE )
CARPINITO, individually and as a )
marital community )
)    FILED: September 26, 2016
)
____Respondents/Cross-Appellants.__)

TRICKEY, A.C.J. — The trial court awarded monetary sanctions against Benson Village Associates for discovery violations. Benson argues that it did not violate the discovery rules. We hold that the trial court did not abuse its discretion when it determined that Benson failed to make a reasonable inquiry before responding to discovery requests.

Both Nancy Loe and Benson appeal the specific sanctions imposed. Loe argues that the trial court should have denied Benson's request for a trial de novo instead of imposing monetary sanctions. Benson maintains that the trial court should not have awarded monetary sanctions to Loe. We reject both contentions and we affirm.

## FACTS

Nancy Loe lived in a unit in the Benson Village Apartments. Benson Village Associates owns the apartment complex and hired Olympic Management Company to manage them in 2001.

In November 2010, Loe fell in a common area outside the office of Benson Village Associates. Loe sued Benson Village Associates and others, alleging that she had tripped over small decorative pumpkins that were in the walkway.

In February 2014, Loe served Benson with requests for production, including a request for documents describing procedures to maintain the safety of walkways and procedures to follow in the case of an accident. Benson did not supply any documents in response to these requests, despite Loe's request for Benson to supplement its responses.

In August 2014, the case proceeded to arbitration. During a Benson employee's testimony, Loe determined that there were written documents outlining procedures for reporting accidents and maintaining common areas and walkways. Loe prevailed at arbitration.

Benson sought a trial de novo. Loe renewed her requests for production, based on the employee's testimony. Benson produced an excerpt from Olympic Management Company's Operations Manual. Following that disclosure, Loe requested and received a complete copy of the manual.

Loe moved for sanctions, alleging that Benson violated CR 26(g) by not producing the manual in response to Loe's earlier requests. Loe requested monetary sanctions and a denial of Benson's request for a trial de novo. The trial

court ordered Benson to pay Loe's attorney fees and costs for attending the arbitration proceeding and for bringing the motion for sanctions, totaling approximately $3,500. Benson moved the trial court to reconsider. The trial court denied the motion.

At trial, Loe introduced the manual into evidence, in an attempt to show that Benson did not follow its own policies. The jury returned a verdict for Benson. Loe appeals.

## ANALYSIS

### Scope of Review

Benson argues that Loe cannot raise issues related to the trial court's imposition of sanctions because she designated only the jury verdict in her appeal, not the order granting sanctions. Loe counters that, under RAP 2.4(a), the Court of Appeals may review the trial court's earlier ruling because it prejudicially affected the jury verdict. We agree with Loe.

"The scope of a given appeal is determined by the notice of appeal, the assignments of error," and the parties' substantive arguments. Clark County v. W. Wash. Growth Mgmt. Hearings Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013). The party must designate in its notice of appeal the decision that it wants the Court of Appeals to review. RAP 5.3(a). But, "[t]he appellate court will review a trial court order or ruling not designated in the notice . . . [if] the order or ruling prejudicially affects the decision designated in the notice." RAP 2.4(b). If the later, designated decision "would not have occurred absent the trial court's" earlier, undesignated decision, the earlier decision prejudicially affected the designated decision. Adkins

v. Alum. Co. of Am., 110 Wn.2d 128, 134, 750 P.2d 1257, 756 P.2d 142 (1988).

Here, Loe appealed the verdict entered against her after Benson's trial de novo. When Loe moved for sanctions against Benson she asked that the trial court deny Benson's request for a trial de novo. The trial court ordered sanctions against Benson but allowed Benson a trial de novo. If the trial court had granted Loe's request to deny Benson's trial de novo, there would have been no trial verdict. Accordingly, the trial court's decision not to deny the trial de novo prejudicially affected the verdict from that trial. We may review Loe's claim under RAP 2.4(b).

Benson cites only Clark County for its argument to the contrary. Clark County is distinguishable. There, the Court of Appeals adjudicated issues that neither party had raised, despite the parties' strong objections. Clark County, 177 Wn.2d at 142. The Supreme Court reversed, holding that "an appellate court errs by adjudicating separate and distinct claims resolved below and not raised on appeal." Clark County, 177 Wn.2d at 147. The court focused on the fact that the parties had not raised the issues in their briefs. Clark County, 177 Wn.2d at 147. Here, Loe assigned error to the trial court's failure to deny Benson's request for a trial de novo and devoted her entire brief to the issue. We conclude that nothing in Clark County suggests that this issue is outside the scope of the appeal.

### Violation of CR 26(g)

Benson argues that the trial court abused its discretion by finding that its responses to Loe's requests for production violated CR 26(g). We disagree.

Under CR 26(g), an attorney of record must sign each response to a discovery request. The attorney must certify that he has read the response "and

that to the best of [his] knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with [the discovery] rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, . . . and (3) not unreasonable or unduly burdensome or expensive." CR 26(g).

The court uses an objective standard to determine whether an attorney has made a reasonable inquiry. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 343, 858 P.2d 1054 (1993). An attorney cannot rely on his "[s]ubjective belief or good faith" to avoid sanctions. Fisons, 122 Wn.2d at 343. "The responses must be consistent with the letter, spirit and purpose of the rules." Fisons, 122 Wn.2d at 344.

Before imposing sanctions, the court should consider "all of the surrounding circumstances, the importance of the evidence to its proponent, and the ability of the opposing party to formulate a response or to comply with the request." Fisons, 122 Wn.2d at 343. If the court determines that a party has violated the rule it "*shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction.*" CR 26(g)(3) (emphasis added).

We review a trial court's imposition of sanctions for an abuse of discretion. Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc., 168 Wn. App. 710, 714, 282 P.3d 1107 (2012). A trial court abuses its discretion when it bases its decision on untenable grounds or when it is manifestly unreasonable. Wash. Motorsports, 168 Wn. App. at 714. The trial court should state its reasons for

5

imposing sanctions clearly "on the record so that meaningful review can be had on appeal." Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036, 1040 (1997).

Here, Loe requested "any documents describing or referring to the system or routine of inspecting and/or maintaining the floors and/or walking surfaces of the area where this incident occurred."[1] Benson responded that the place where Loe fell "is a general walkway area. The area is inspected daily by the Office and Maintenance staff prior to the office opening and a few times throughout the day."[2]

Loe also requested "any policies or procedures which refer to slip(s), fall(s), trip(s) and/or any other sort of injury of tenants and/or property invitees."[3] Benson responded that there were none.

Loe requested that Benson supplement these responses. Benson's counsel responded, "I am puzzled why you believe our answer 'There is none' is not sufficient. Are you aware of there being documents regarding inspection and/or maintenance of the floors and/or walking surfaces for the area where the incident occurred that I am unaware of?"[4]

Months later, after arbitration was over and Benson requested a trial de novo, Benson produced an excerpt from Olympic Management Company's Operations Manual, which Benson employees used to manage day-to-day operations of Benson Village Apartments. A resident manager testified at the arbitration that she had "read every single thing" in the manual, she would look up

---

[1] Clerk's Papers (CP) at 397.
[2] CP at 404.
[3] CP at 398.
[4] CP at 424.

things she did not know in the manual, and it had been in use at the time of Loe's accident.[5]

The manual contained information that was responsive to Loe's requests for production, including instructions to property managers to inspect the grounds daily and keep an incident report log:

> Your property's grounds, laundry rooms, and recreational facilities are to be walked each morning by the Resident Manager, Assistant Manager or Leasing Agent on duty to insure that they are clean and free of debris.[6]
>
> . . . .
> This Log should be used for any major or minor incident or accident at your property. This includes any . . . tripping or falling at the property . . . .
> Please fill out an Incident/Accident Report Form. . . . Please make sure to attach any statements, reports, etc., as these are essential for any possible future claims or lawsuits. Please always make sure to take pictures.[7]

When Loe moved for the court to impose sanctions on Benson for failing to provide the manual sooner, Benson defended itself by claiming that "the specificity of the language in the requests did not trigger in defendants the thought that the [documents] would be responsive."[8]

The trial court found that

> the subject of [Loe's] discovery and Request for Production was readily available to [Benson]. The attorney certification to the responses to interrogatories and requests for production was not made after reasonable inquiry and the initial responses were not consistent with the letter, spirit, and purpose of the rules.
> [Benson] violated discovery rules by failing to timely and completely produce responsive documents to [Loe's] Request for Production.[9]

---

[5] CP at 467-68.
[6] CP at 445.
[7] CP at 446.
[8] CP at 112.
[9] CP at 260.

7

When denying Benson's request for reconsideration, the court added, "In this case, the documents requested were relevant and [Benson] did not seek a protective order. [Benson], therefore, did not have the option of unilaterally determining what [it] would produce or answer, once discovery requests were made."[10]

This ruling was within the trial court's discretion and its reasons were clear. Benson's resident manager's testimony supports the trial court's finding that the manual was readily available to Benson. The quoted passages of the manual show that it was responsive to Loe's requests. This was not, as Benson has suggested, a satellite issue. In a negligence suit based on a plaintiff's fall, the defendant's policies for preventing slip and falls are relevant and important. The fact that Loe did not prevail at trial does not make the failure to produce the manual a collateral issue.

And, even if Benson did not immediately realize that the manual was relevant, Benson's correspondence with Loe should have triggered the appropriate response. Benson contends that there was no violation because it explained why it did not produce the manual at first. As quoted above, the trial court held that Benson's inquiry was not reasonable.

Based on its finding, the trial court had no choice but to impose sanctions. There was no error.

Benson argues that the trial court abused its discretion because it "merely quote[d] the rules" and did not properly support its decision with facts. We conclude that the trial court's findings are sufficient. First, CR 26(g) is very broad.

---

[10] CP at 374-75.

8

The trial court's findings significantly narrowed the basis for its decision. For example, it did not impose sanctions because Benson acted with an "improper purpose" or had produced documents in a volume that was "unduly burdensome." See CR 26(g)(2), (3).

Second, the factual findings are specific enough to permit review. The court found that Benson had not made a reasonable inquiry before responding to Loe's request for production, that the documents were relevant, and that they were readily available to Benson. Since Loe brought the motion on the limited grounds that Benson inadequately responded to just two requests for production, there can be no doubt about the basis of the trial court's ruling.

Benson also argues that the trial court needed to explain how it determined that Benson failed to make a reasonable inquiry and why Benson's explanation was insufficient. As discussed above, the trial court's findings indicate that it considered Benson's failure to produce the manual unreasonable. Benson cites no authority for the claim that the findings must be more specific.

Benson further contends that the trial court abused its discretion because it relied on Carlson v. Lake Chelan Community Hospital, an allegedly "flawed" case, and, contrary to the holdings in Carlson, the trial court did not find that Benson's failure to produce the manual was willful.[11] 116 Wn. App. 718, 75 P.3d 533 (2003). We reject both these arguments. First, the trial court cited Carlson only for the language of CR 26(g) itself and the well-established rule that discovery "responses

---

[11] Br. of Resp'ts/Cross-Appellants at 34. Benson argues both that Carlson is flawed and that the trial court erred by not following Carlson.

must be consistent with the letter, spirit[,] and purpose of the rules."[12] Fisons, which Benson acknowledges is Washington's seminal opinion on CR 26(g) sanctions, recites the same principle. 122 Wn.2d at 344.

Second, Carlson does not hold that a party's misconduct must be willful to violate CR 26(g). 116 Wn. App. at 739. It holds that, before imposing a sanction as severe as excluding testimony, the trial court must find that the party's misconduct was willful. Carlson, 116 Wn. App. at 737. Whether a party violated a discovery rule and what sanction would be appropriate for that violation are two different questions.

Having concluded that Benson violated CR 26(g), we now address the second question, whether the trial court's sanctions were appropriate.

## Monetary Sanctions

Benson argues that the trial court abused its discretion by ordering Benson to pay Loe's costs and fees for participating in arbitration and bringing a motion for sanctions. We disagree.

CR 26(g) requires the court to impose sanctions once it has determined that a party violated the rule, but the trial court has "wide latitude" to fashion appropriate sanctions. Fisons, 122 Wn.2d at 355. Fisons provides principles to guide a trial court's decision:

> First, the least severe sanction that will be adequate to serve the purpose of the particular sanction should be imposed. The sanction must not be so minimal, however, that it undermines the purpose of discovery. The sanction should insure that the wrongdoer does not profit from the wrong. The wrongdoer's lack of intent to violate the rules and the other party's failure to mitigate may be considered by the trial court in fashioning sanctions.

---

[12] CP at 260.

The purposes of sanctions orders are to deter, to punish, to compensate and to educate.

Fisons, 122 Wn.2d at 355-56 (footnotes omitted). The court in Fisons also warned trial courts not to allow sanction rules to become fee-shifting rules or allow requests for sanctions to "turn into satellite litigation." 122 Wn.2d at 356.

The trial court determined that monetary sanctions were the least severe sanction necessary to serve the purpose of the sanction. It ordered Benson to compensate Loe for both her participation in arbitration and her efforts to bring the motion for sanctions. The award for participating in arbitration was $1,500. The award for bringing the motion for sanctions totaled $1,995.30.

Benson moved the court to reconsider its award of compensation for Loe's participation in arbitration. Benson argued that Loe would have incurred those costs regardless of any discovery violation. The trial court denied Benson's motion, holding that "sanctions are imposed for more purposes than just compensation" and that it had a duty to "aggressively enforce the discovery rules . . . in order to make the trial process a fair debate on the facts and not a game of hide and seek."[13]

On appeal, Benson argues that the trial court erroneously denied its motion for reconsideration. It makes numerous unpersuasive attacks on the amount of sanctions. Benson contends that the additional $1,500 award for Loe's arbitration efforts goes against the policy in Fisons. We disagree. The award appropriately punishes Benson and may help deter future discovery sanctions. It is not so minimal that it undermines the purpose of discovery and not so large that it would

---

[13] CP at 374-75.

encourage attorneys to exploit the sanctions process.

Benson also argues that awarding Loe costs for bringing the motion for sanctions was an abuse of discretion. Loe's expenses for bringing the motion were an appropriate basis for an award. CR 26(g) specifically contemplates that the trial court may order the violating party to pay the other side "the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee." CR 26(g)(3). Loe incurred the costs associated with bringing the motion for sanctions because of Benson's violation of the rule.

In its reply brief, Benson suggests that Loe, not Benson, is the one who violated CR 26(g). If this is true, Benson could have brought its own motion for sanctions against Loe. It would not excuse Benson's discovery violations.

Similarly, Benson argues that the award "allowed Loe to profit from [a] collateral discovery issue."[14] Benson describes Loe's attempts to discover this manual as a "fishing expedition."[15] Neither argument is a fair characterization of Loe's efforts. The manual was relevant to the case and responsive to Loe's requests. And, as the trial court noted, Benson never sought a protective order or argued that Loe's requests were too broad.

Finally, if this court upholds the award of sanctions, Benson requests that the court order Benson to pay the sanctions to a court fund instead of to Loe. While Fisons suggests that a court may want to consider "requiring that monetary sanctions awards be paid to a particular court fund or to court-related funds," it was not an abuse of discretion to order Benson to pay Loe. 122 Wn.2d at 356.

---

[14] Br. of Resp'ts/Cross-Appellants at 39.
[15] Br. of Resp'ts/Cross-Appellants at 39.

12

## Request for Trial De Novo

Loe argues that denying Benson's request for a trial de novo was the only appropriate sanction to stop Benson from profiting from its violation. It is not clear how Benson would profit in this case. At arbitration, when Loe did not have the manual, Benson lost. The manual, though relevant, was not a smoking gun and likely would not have substantially impacted either side's preparation.

Loe claims that Benson "should not have been permitted to add to the trial court's caseload by obtaining a trial after engaging in arbitration in bad faith."[16] A trial de novo after arbitration does not improperly add to a trial court's caseload; it is specifically allowed under MAR 7.1. Moreover, while the trial court found that Benson violated CR 26(g), it made no finding that Benson intentionally violated CR 26(g) or acted in bad faith. There is no justification for a sanction as severe as denying Benson's request for a trial de novo.

Loe also argues that the monetary sanctions awarded by the court are insufficient to deter or punish Benson because Benson is insured. Benson claims this is not a proper argument.[17] We need not consider Loe's argument because she did not raise it in the trial court and there is not a sufficient record to review it. RAP 2.5(a). Regardless, Loe's argument is without merit.

Loe is essentially asking this court to take judicial notice of the fact that $3,500 is "insignificant" to all insurance companies.[18] Not only would that be

---

[16] Br. of Appellant at 10.
[17] Benson argues that this not a proper consideration under ER 411. ER 411 restricts the use of a party's insurance status to show liability in negligence claims. Benson has not demonstrated its relevance here.
[18] Br. of Appellant at 11.

inappropriate, the record does not contain specifics of the insurance coverage between Benson and its insurer. There is no record of which entity was financially responsible for the sanctions.

In short, the trial court did not abuse its discretion by imposing only monetary sanctions. We affirm the trial court's order of sanctions.

Trickey, ACJ

WE CONCUR:

Leach, J

Cox, J.