**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Parenting of<br><br>K.M.D. and K.N.D.<br><br><br>KEITH CHARLES DRAKE II,<br><br>             Respondent,<br><br>v.<br><br>MAGGIE MAY SEWELL,<br><br>             Appellant. | No. 88268-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Maggie Sewell appeals the trial court's decision modifying the parenting plan for the parties' two minor children. Because Sewell fails to demonstrate that the trial court abused its discretion, we affirm.

I

Keith Drake and Maggie Sewell were married in 2013 and separated in 2016. The parties have two minor children, K.M.D. and K.N.D. An agreed final parenting plan was entered on May 24, 2017. The original parenting plan stated that both parents had a long-term emotional or physical problem that interfered with their ability to parent. The plan required both parents to be evaluated and treated for various listed health

conditions but did not impose any restrictions on residential time, except in the event of noncompliance or a determination of unfitness.

On November 24, 2021, Sewell filed a motion for adequate cause and a petition to modify the parenting plan, on the grounds that the children's current living situation is harmful to their physical, mental, or emotional health.[1]  Sewell alleged that Drake had recently ceased taking his medication for bipolar disorder, resulting in increased bizarre or erratic behavior, including sending excessive nonsensical communications.  Sewell also requested that the trial court issue a restraining order against Drake.  The trial court granted Sewell's request for a temporary restraining order, prohibiting Drake from disturbing the peace of, hurting, threatening, or entering the home, workplace, or school of Sewell, her new spouse, K.M.D., K.N.D., and Sewell's child from another relationship.

In his response to the petition, Drake argued that any major changes and a restraining order were unwarranted.  Drake also requested that a restraining order be entered against Sewell and her spouse.

On January 13, 2022, the commissioner denied Sewell's motion for adequate cause, as it did not find a substantial change in circumstances, and directed the parties to immediately resume the original parenting plan.  Sewell filed a motion for revision of the commissioner's order.  The motion was denied on June 2, 2022.  Drake filed a motion for attorney fees and make-up residential time, which the court also denied.

Sewell filed a new motion for adequate cause to amend the parenting plan, again alleging that Drake was not properly managing his mental health.  In response, Drake also requested a major change to the parenting plan, alleging that Sewell was retaliating

---

[1] Drake filed a petition to amend the parenting plan in 2019.  From the record presented, it does not appear that he pursued it any further.

against him and causing the children emotional distress. Because both parties agreed that there was adequate cause to amend the parenting plan (although they disagreed on the underlying basis), the trial court entered an order finding adequate cause and setting the petition for a full trial.

After extensive motion practice and multiple temporary parenting plans, the case proceeded to trial beginning on June 4, 2024. The trial court heard testimony from numerous witnesses, including Sewell, Drake, the GAL, Sewell's husband, Sewell's mother-in-law, Drake's mother, Drake's neighbor, the children's piano instructor, Drake's treating psychiatric nurse practitioner, and two of Drake's friends.

The court issued its narrative ruling on September 6, 2024, outlining its findings of fact and conclusions of law and granting the motion for major modification in part. The court determined that a major modification to the parties' residential schedule was not warranted, as the court determined that it "cannot and does not conclude that the children's present environment is detrimental to the children, or that the harm occasioned by a modification is outweighed by a benefit to the children." The court found that although "co-parenting has been contentious and subject to regular court involvement," it "saw little evidence at trial that the children themselves have been determinately affected by the behavior of their parents." The court also found that "while exceedingly difficult to deal with, and understandingly upsetting, the Court does not conclude that Petitioner Drake II's behavior has unreasonably interfered with mother's free will or personal liberty, such that it constitutes coercive control as that term is defined under the law." The court declined to impose restrictions under RCW 26.09.191. The court did determine that minor modifications were necessary in light of

3

Drake's behavior and adopted some of the GAL's recommendations with the aim of reducing conflict and encouraging clear boundaries and expectations.

In accordance with its findings and conclusions, the trial court issued its order on modification and amended final parenting plan on November 12, 2024. The amended parenting plan retained equal residential time for each parent, with minor alterations concerning vacations and holidays. The parenting plan also retained the requirement that both parents comply with recommended medical treatment but did not require proof of compliance unless ordered by the court.

Drake immediately filed a motion for reconsideration. Without requesting a response from Sewell, the trial court accepted some of Drake's arguments and issued an amended order on modification and final parenting plan. Sewell filed an objection to the newly amended orders and filed her own motion for reconsideration. The court, acknowledging the procedural irregularity, granted Sewell's motion in part by permitting her to respond to Drake's motion, and set both motions for reconsideration for a hearing.

On March 19, 2025, the trial court issued two detailed orders granting in part and denying in part both motions for reconsideration. In its orders, the court made additional findings of fact and conclusions of law, some of which clarified its earlier findings and some of which it had neglected to make in the first instance. Of particular importance, the court found that it was necessary to award sole decision-making to Sewell, in light of Drake's behavior and the deterioration of the co-parenting relationship. In accordance with its findings and conclusions, the court entered the newly amended final parenting plan and order on modification on April 18, 2025.

4

Both parties timely appealed. Drake has since withdrawn his appeal.

II

We review a trial court's decision to modify a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Littlefield, 133 Wn.2d at 46-47. The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). " 'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." Chandola, 180 Wn.2d at 642.

A

Sewell first asserts that the trial court erred by determining that she had not established a substantial change in circumstances warranting a major modification to the parenting plan. She contends that in reaching this conclusion, the trial court misconstrued the definition of "coercive control" as that term is used in chapter 7.105 RCW. We disagree.

A trial court's authority to modify a parenting plan is strictly controlled by statute. RCW 26.09.260 provides several grounds on which a trial court may order such a modification. RCW 26.09.260(1) authorizes a trial court to order major modifications to a parenting plan when a substantial change has occurred in the circumstances of either the child or the nonmoving party. The modification must also be in, and necessary to serve, the child's best interests. RCW 26.09.260(1). The court may order major modifications to the residential schedule when it finds one of the

5

circumstances in RCW 26.09.260(2) present. These include when "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(c). The trial court may also make minor modifications to the parenting plan absent any circumstances listed in RCW 26.09.260(2), if the modification does not change the residence the child is scheduled to reside in the majority of the time and is limited to no more than 24 days per year. RCW 26.09.260(5).

Here, the parties agreed that modifications to the parenting plan were necessary, given the conflict between the parents. But Sewell also requested a major modification to the parenting plan that would substantially reduce Drake's residential time with the children. Sewell asserted that restrictions were warranted under RCW 26.09.191, as she was the victim of domestic violence through Drake's use of coercive control. The trial court considered the evidence presented by the parties and found that Sewell had not presented sufficient evidence of coercive control, such that additional restrictions were not warranted and a major modification to the parenting plan was not appropriate.

Sewell asserts multiple errors by the trial court implicated by its findings. First, Sewell argues that the trial court misconstrued the definition of "coercive control." Specifically, Sewell argues that the trial court "incorrectly focused on Father's intent, disregarding the harm he caused Mother."

We note, initially, that Sewell did not make this argument in the trial court. In her motion for reconsideration, Sewell argued the opposite: that the trial court had incorrectly focused on the lack of interference with her free will and liberty, disregarding

6

its own finding that the purpose of Drake's conduct was to control her. ("The Court found that the purpose of the Father's conduct is to control the Mother."). The trial court's order on reconsideration stated that it did not make such a finding, but that it found that Drake's behavior was a manifestation of his mental illness. What Sewell now refers to as the trial court's improper focus on Drake's intent was, in fact, the court's attempt to clarify Sewell's misunderstanding of its earlier findings.

Viewing the trial court's order on reconsideration in conjunction with its original findings of fact and conclusions of law, the trial court did not misinterpret the statute. As the trial court correctly noted, RCW 7.105.010(4) defines "coercive control" as "a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty." In its initial ruling after trial, the court found, "[w]hile exceedingly difficult to deal with, and understandably upsetting, the Court does not conclude that Petitioner Drake II's behavior has unreasonably interfered with mother's free will or personal liberty, such that it constitutes coercive control as that term is defined under the law." And, in its order on reconsideration, the trial court found "more creditable the testimony describing father's behavior as a manifestation of his illness, rather [than] an intentional effort to control or harass the mother." Having made the necessary findings under the statute, the trial court properly concluded that Drake's conduct did not satisfy the definition of "coercive control."

Sewell further argues that the trial court should have found coercive control because the evidence she presented was similar to the evidence presented in prior unrelated cases. This argument asks us to reassess witness credibility and reweigh the

evidence, which we will not do.  In re Welfare of Ca.R., 191 Wn. App. 601, 609, 365 P.3d 186 (2015).  Further, mere similarity of facts does not dictate the court to reach the same conclusions as prior trial courts, particularly when the law grants the trial court significant discretion in fashioning the terms of a parenting plan.  In re Marriage of Laidlaw, 2 Wn. App. 2d 381, 388, 409 P.3d 1184 (2018) (a trial court has broad discretion to structure a modified parenting plan).

Additionally, because Sewell made these arguments in the context of a petition to amend a parenting plan, she was required to prove that the current residential schedule was detrimental to the children, not only to her.  In the trial court's initial decision after trial, the court found:

> While difficult for the parents and those supporting them, the Court saw little evidence at trial that the children themselves have been determinately affected by the behavior of their parents.  Rather, as observed by the Guardian ad Litem, there is no creditable evidence of abuse, and the children appear loved, cared for, and well situated with each parent.  They have only ever known a 50-50 schedule, and each child has comfort with this schedule and a strong relationship with each parent.

Although Sewell assigns error to this finding, she does not argue that it was unsupported by substantial evidence.  Rather, Sewell asserts that the trial court ignored evidence showing a risk of harm to the children.  The record shows that the trial court did consider this evidence, and specifically addressed it in its findings on reconsideration:

> While residing in a tense environment caused by parental conflict *may* have a negative effect on children, the Court was not persuaded at trial that any of these events in fact have had that effect of the children here.  While the GAL report opines that these events "create a safety issue" for the children due to their awareness and fear, the Court did not find that opinion substantiated by the evidence.  Rather, as was also

recognized by the GAL, the children are well bonded and secure in their present environments.

In other words, the trial court found that although there may theoretically be a risk of harm to the children, the evidence presented did not support such a finding. To the extent that Sewell asks us to reweigh the evidence, we decline to do so. Ca.R., 191 Wn. App. at 609. Sewell fails to demonstrate that the trial court abused its discretion by not making a major modification to the parenting plan.

B

Sewell asserts that the trial court erred by "sua sponte" requiring her to file a CR 60 motion to set aside the original parenting plan. This argument misunderstands the court's decision. A petition to modify the parenting plan does not bring up the original parenting plan for de novo review. George v. Helliar, 62 Wn. App. 378, 385, 814 P.2d 238 (1991). Instead, the court's focus is on the children's present environment and whether the existing residential plan is detrimental to their health. George, 62 Wn. App. at 385; see also RCW 26.09.260(2)(c). In her motion for reconsideration, Sewell argued

> In finding 2 the Court erroneously binds the parties to their 'agreed' parenting plan even though the Mother entered the orders under duress. To hold the Mother to the terms of this manipulative and coercive parenting plan is tantamount to perpetuating the emotional abuse the Father inflicted on her during their tumultuous marriage.[2]

In its order on reconsideration, the trial court correctly noted that this was not a proper argument on a petition to amend the parenting plan:

> The current Parenting Plan was authored by the parties, signed by each, and submitted to and approved by the Court in 2017. It became final at that time, and [] no one has filed the necessary motion to challenge it from its inception. The making and filing of an agreed permanent Parenting Plan that is adopted and approved by the court as the parties'

---

[2] Sewell repeats this argument in her opening brief. We similarly reject it, as the terms of the 2017 parenting plan are not subject to review in this appeal.

final Parenting Plan creates a plan binding between the parents. Absent litigation under CR 60, it follows that changes to such an agreed permanent Parenting Plan must meet the modification standards of RCW 26.09.260.

The trial court was not, as Sewell appears to claim, ruling that it would not consider any pre-2017 instances of domestic violence. Rather, the court was merely rejecting Sewell's legally erroneous argument that she should not be bound by the original parenting plan. There was no error.

C

Sewell asserts that substantial evidence supports a modification of the parenting plan to include the restrictions she proposed. Substantial evidence review requires this court to examine the trial court's findings of fact to determine whether the evidence presented is " 'sufficient to persuade a rational fair-minded person that the finding is true.' " DeVogel v. Padilla, 22 Wn. App. 2d 39, 48, 509 P.3d 832 (2022) (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). The evidence is viewed in the light most favorable to the party that prevailed in the trial court. DeVogel, 22 Wn. App. 2d at 48 (citing Thomas v. Ruddell Lease-Sales, Inc., 43 Wn. App. 208, 212, 716 P.2d 911 (1986)). In addition, on a petition to amend a parenting plan, " 'there is a strong presumption in favor of custodial continuity and against modification.' " In re Welfare of R.S.G., 172 Wn. App. 230, 245, 289 P.3d 708 (2012) (quoting In re Marriage of Shryock, 76 Wn. App. 848, 850, 888 P.2d 750 (1995)).

Sewell does not apply these standards of review in her brief. Instead, Sewell requests that we review the evidence presented at trial in the light most favorable to her and asks us to direct the trial court to change its findings of fact. "This court does not find facts and is not in a position to substitute its view of the facts for those of the trial

10

court." Wash. Motorsports Ltd. P'ship v. Spokane Raceway Park, Inc., 168 Wn. App. 710, 717, 282 P.3d 1107 (2012) (citing Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009)).

Relying on an unpublished decision of Division Three of this court, Sewell asserts that this court may direct the trial court to enter a finding of domestic violence based on its own review of the record.[3]  We decline Sewell's invitation to reassess the evidence presented at trial.

Sewell also asserts that the trial court erred by not amending the parenting plan based on the father's "per se bad-faith violations of the parenting plan."  This argument is meritless.  Although RCW 26.09.260(2)(d) permits a court to alter the residential schedule if it "has found the nonmoving parent in contempt of court at least twice within three years because the parent failed to comply with the residential time provisions," there is nothing in the record on appeal demonstrating that Drake was ever found in contempt.  Additionally, "mere violation of the parenting plan cannot per se require a change in custody when such change is contrary to the best interests of the child."  In re Parentage of Schroeder, 106 Wn. App. 343, 351, 22 P.3d 1280 (2001).

Finally, Sewell faults the trial court for accepting some of the GAL's recommendations while rejecting others.  But the trial court is not bound by the GAL's recommendations.  In re Marriage of Magnuson, 141 Wn. App. 347, 350, 170 P.3d 65 (2007).  Rather, the court independently assesses the GAL's evidence, just as it assesses the evidence presented by the parents.  In re Marriage of Bobbitt, 135 Wn. App. 8, 28, 144 P.3d 306 (2006).  Furthermore, the trial court "was free to accept, or

---

[3] In re Marriage of Thorleifson, No. 38752-6-III (Wash. Ct. App. July 9, 2024) (unpublished) https://www.courts.wa.gov/opinions/pdf/387526_unp.pdf

reject, any part of the testimony of any witness" and thus was not obligated to adopt the GAL's recommendations wholesale. Moen v. Chestnut, 9 Wn.2d 93, 102, 113 P.2d 1030 (1941).

D

Sewell asserts that the trial court erred by failing to remove the mediation requirement from the terms of the amended parenting plan. Sewell contends that RCW 26.09.187(1)(a) prohibits a mediation requirement "where parental conflict substantially inhibits participation" and when one parent has been granted sole decision-making authority. We disagree.

RCW 26.09.187(1)(a) states that "[d]ifferences between the parents that would substantially inhibit their effective participation in any designated process" is one factor for the court to consider in determining whether to include a mediation requirement in a parenting plan. Nothing in the statute states that this factor is dispositive. Additionally, nothing in the statute prohibits the court from including a mediation requirement when one parent has been granted sole decision-making authority. The only legal authority Sewell cites in support of her argument is an unpublished case which, as we previously noted, has no precedential value. GR 14.1(a). The trial court did not err by retaining the mediation requirement from the original parenting plan.

E

Sewell makes multiple arguments concerning the allocation of fees and costs, asserting that the trial court erred by ordering disproportionate payment of GAL fees, splitting mediation costs equally, deviating from the statutory child support schedule, and not awarding her fees due to intransigence. Sewell fails to provide citations to the

record and does not develop her argument with respect to any of these claims of error. See Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2014) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Accordingly, we decline to consider any of Sewell's financial arguments.

F

Sewell requests an award of attorney fees on appeal. RAP 18.1 requires a party requesting fees on appeal to devote a separate section of their brief to the request. Sewell failed to do so. Sewell is also a non-attorney pro se litigant and not entitled to attorney fees. See In re Marriage of Brown, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011). We deny Sewell's request for fees.

Drake requests that we sanction Sewell under RAP 18.9 for filing a frivolous appeal. RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal to pay sanctions, including compensatory damages to the opposing party. "An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013). While we reject Sewell's arguments, the appeal was not frivolous, and we deny Drake's request for sanctions.

Because Sewell fails to demonstrate that the trial court abused its discretion, we affirm.

_Mann, J._

WE CONCUR:

_Bui, J._

Díaz, J.